[Civ. No. 14468. First Dist., Div. Two. Aug. 23, 1950.]

LYMAN E. McGUFFIN, Respondent, v. WILLIAM MAURER, Appellant.

J. W. Coleberd and Richard P. Lyons for Appellant.

Saul N. Ross for Respondent.

DOOLING, J.—Defendant appeals from a judgment awarding plaintiff $500 actual and $250 punitive damages for libel. Plaintiff and one Risso were the two successful candidates at an election for city councilmen of San Bruno. They conducted a joint campaign, had a joint campaign committee, issued joint campaign literature and referred to themselves in the conduct of their campaign as a "team."

One Cunningham was a rival candidate for the same office. Shortly before the election at a meeting with Cunningham at which Risso was present, but not the plaintiff, an effort was made to induce Cunningham to withdraw as a candidate. Out of this meeting the libelous publication grew. After the election of plaintiff and Risso, defendant published an article in his newspaper headed: "Blackmail Marks Local Election," in which it was stated: "The recent City election campaign was a far cry from having been the 'clean' campaign the McGuffin-Risso team had declared they would conduct. Instead it degenerated into a disgraceful affair, marked by intimidation, coercion, and blackmail. . . .

"Apparently determined to win at all costs, the victors . . . even resorted to coercion and blackmail on the eve of the election to force one of the leading candidates to withdraw from the race to assure the election of both McGuffin and Risso."

Then followed a more detailed statement with quotations from other newspapers. The article continued: "Do You Know: That one of the members of the successful McGuffin-

Risso team . . . was among the blackmailers who cornered and then browbeat Council candidate 'X' into signing the withdrawal papers? that his teammate was in on the deal?——

"Fellow citizens, in view of the indisputable blackmail facts can you truly feel secure in the sanctity of your home with blackmailers nestling in City Offices?"

The plaintiff, McGuffin, in writing demanded the publication of a retraction, after which defendant, instead of a retraction, published a reaffirmation of the previous publication thus satisfying for plaintiff's action the requirements of section 48a, Civil Code.

█ The libelous character of the publication as to plaintiff is not questioned, the sole defense being the truth of the publication. The fact that plaintiff and Risso campaigned jointly as a team standing alone obviously would not make plaintiff responsible for Risso's attempt by blackmail (assuming its proof) to induce Cunningham to withdraw as a candidate. Plaintiff testified that he had no knowledge of the intended meeting with Cunningham and neither on principles of agency nor conspiracy could plaintiff be held responsible for the attempt of his cocandidate to use blackmail in the effort to eliminate an opposing candidate. Agency requires precedent authorization or subsequent ratification, neither of which was proved; and conspiracy requires as one of its elements a knowledge of the unlawful purpose (*People* v. *Bucchierre,* 57 Cal.App.2d 153, 163 [134 P.2d 505]) since a conspiracy requires a corrupt agreement or concert of action. (2 Wharton's Criminal Law, 12th ed., § 1608, p. 1865.)

█ There is no substance in the complaint of errors in the exclusion of evidence. The court properly ruled that the acts of Risso were not binding on plaintiff and might not be proved against him unless a foundation showing plaintiff's knowledge of and responsibility for Risso's conduct was first laid.

█ In an effort to lay such foundation plaintiff was asked on cross-examination: "Do you know whether or not Mr. Risso visited either Mr. John Cunningham or Mr. John Cunningham's wife in an attempt to get him to withdraw from this race for City Councilman?" The sustaining of an objection to this question, standing alone, might have been error, but the subsequent cross-examination shows that it was without prejudice. At a later point in the cross-examination the following question to plaintiff and answer by him appear:

"Q. Is it your statement now that you at no time had any

knowledge that Mr. Cunningham was to be asked to withdraw from this race?

"A. I had absolutely no knowledge there was to be any meeting, that he was to be asked any questions, and his name had never been mentioned to me, other than that of any other candidate in the race."

Instead of pursuing the inquiry further counsel for defendant immediately terminated his cross-examination with the statement: "That is all."

We find no prejudicial error in the record.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.